Case number 1937 35 Western Missouri United States versus Terrence Harvey. Mr. Moss. Good morning, your honors. This appeal challenges no factual findings made below, but only the legal conclusion, which, of course, require no deference from this court. It is search Mr Harvey. And that fact is key to the question whether police used the least intrusive means to determine the identity of Kyle Gabour, which was the initial purpose of the stop. Even if police did have reasonable suspicion to seize Mr Gabour, which we dispute for the reasons laid out in the brief as well as the reply brief, police did not use the least intrusive means case. Are you relying on in this in this context? That's the first. That's the First Amendment concept. It's also a Fourth Amendment. Never at versus Baron is the Eighth Circuit case that I rely on. There are a variety. There are other cases basically which stand for the proposition that police, both in making the seizure and in effectuating the purpose of the stops, are required to use the least invasive or least intrusive means. So this is just what I'm sorry, Judge Grass. Please go ahead. Well, counsel, I was just gonna ask that the officer, I believe the chief in this case, had reasonable. Well, there were facts to create reasonable suspicion that one of these people was Mr Gabour, at least, and that there may be guns involved. Wouldn't that give him a reason to search both of them? We do not believe so. We don't believe there was reasonable suspicion to seize Mr Gabour. OK, that's that's our first position. Even if there was reasonable suspicion to seize Mr Gabour, we're arguing that treating police did not use least intrusive means once the stop occurred. So what should they have done instead? This is Judge Cobus. I'm sorry. I think there's a variety of options here that were available. I'd start off with just a question. Which one of you is Cal Gabour? But doesn't doesn't Davison suggest that the safety concerns can come first before the questions? I don't believe those safety concerns pertain to either one of them. And as applied to this case, I think if you look at the safety concerns, what are I mean, we have to get into the reasonable suspicion issue if you want to talk about safety concerns. And we know criminal activity. There's no evidence of criminal activity afoot on that day. I mean, the purposes relied upon for the stop. And this was recited by Abraham, the chief of the Pleasant Valley Police. First of all, he wanted to investigate this theft that occurred three days earlier. That's not criminal activity afoot. Secondly, he wanted to investigate this so-called disturbance, which was not a disorderly There's absolutely no crime that occurred on September 7th. And then the third reason was to serve a trespass notice on Gabour. This is not a case where we're talking about tracking down bank robbers. There was not violent. There was not a crime. So let me let me interrupt and come back to where I started. It seems to me what you're what you're arguing now, as I understand it, it's really one issue. It's not two, because if there's reasonable suspicion to stop and frisk, I dare say you don't have a case where a court has held that you have to you have to use the least intrusive measure when you have when you have grounds to frisk. A frisk is a frisk. And that's good. Judge Loken, you're correct. I haven't found something directly on point. However, this case, there is Fourth Amendment law that requires least intrusive means. That's in that that's in the in the Terry stop context generally. In terms of in terms of how much how much investigating you can do and how long you can take to do it. But a frisk is, you know, we're back to Terry's main issue, which was frisk. Right. Which and again, just just so that I mean, of course, the Missouri State Constitution grants everyone the right to carry a firearm. I mean, that's not disputed in this case. So the mere fact that someone is carrying a firearm, even a concealed weapon, that's not a basis for stop. It's not a basis for search. I believe Judge Gross asked earlier regarding what were the least intrusive alternatives. I suggested simply a question, which one of you is Kyle Gbauer? A second option using Gbauer's booking photo from his arrest by the same police department the previous day. That's certainly less intrusive. Well, counsel, what are they? I mean, what are they supposed to do that? I mean, it's possible that these two guys will wander off at that time, right? I mean, you're asking for a certain amount of delay before the encounter. The Fourth Amendment requires the officers to utilize the least intrusive or invasive means rather than search and seize first, ask questions later. Does the record show the officers asked your client first if he had a gun and then he admitted he did? The record shows that they ordered him to stop, to put their hands in the air, that the officer approached, that Abraham approached him, said he was going to conduct a frisk and ask him if he had any weapons. And at that point, Mr. Harvey said, yes, there is a gun in my pocket. So what? I mean, doesn't that matter? I mean, he asked him first. That's certainly less intrusive, excuse me, than immediately doing the frisk, isn't it? Well, he asked him after he was seized, after he seized a gunpoint, by the way, after he was in the process of conducting the frisk. All we're saying is there's a lot of other means. The Fourth Amendment requires least intrusive means, and that's Navarrette versus Barron. That's an Eighth Circuit case. I noted two less intrusive means. A third one would be contacting his probation officer or initiating a consensual encounter. All of those would be less intrusive than treating Gebauer or treating Mr. Harvey the same as Mr. Gebauer. Keep in mind, while there was a reasonable suspicion to believe that one of those people were Mr. Gebauer, there was a 100% guarantee that one of them was not Mr. Gebauer. And that's what we're focusing on in this case. There's a lot of other means. Abraham was well aware Mr. Gebauer had been arrested. And this idea that he was investigating the theft from a couple of days ago, he knew he was arrested. He knew he was in jail. He had the opportunity to go interview him if he wanted to. So the basis for the stop, at least that part of the basis for the stop, is not enough reasonable suspicion. As noted, no crime occurred that day. So the fact that someone calls the cops on someone, that's not enough reasonable suspicion. And police knew already, no, he had not been served with any police aired in this case. And basically the search and cease first ask questions letter later violated the fourth amendment. I do note I am into my rebuttal time. And unless the court has a question right now, I would like to reserve what little I have left. Well, I do counsel. I do know that I just looked at your table of authorities and both briefs, and I don't see Navarrete versus Barron. So I will need a 28 day letter on that. Okay. It might be in my reply brief, your honor. Well, it may be in there, but then you didn't, somebody didn't put it in your table. I will. I will 28 day that your honor. Thank you. Thank you. Mr. Hurst. Thank you, your honor. Good morning. May it please the court Ben Hurst for the United States. I'd like to start with the suggestion that the officers must use least intrusive means. And I think, I think that the, of looking at Navarrete Brown, I'm looking at Navarrete versus Barron here. It says immediately before it talks about least intrusive means it says a Terry stop, or it says during a Terry stop officers can check for weapons and make it take additional steps that are reasonably necessary to protect their personal safety and to maintain the status code during the course of the stop. And I know that that's exactly the holding of Davison, which is the thing that officers can do. What the whole point of the frisk and what justifies the frisk is a reasonable suspicion, a very low standard that the officers are going to be in danger during the course of the investigation, not at some point after they've already asked a bunch of questions. So the point is that of Davison is that when you walk up into a situation, you get to secure the situation briefly, a limited intrusion, and then you get to do the investigation. That's that's justified by the reasonable suspicion and justified to stop in the first place. And so here, walking up to the the the person that you see, one of whom has got to be Gebauer, and we know from sites that you can stop two different people who meet the the reasonable suspicion, even if you don't know which one of them is the person who to whom your suspicion is completely directed, and then asking that person if they have a firearm. And then when that person tells you that, in fact, they do have a firearm, it is entirely lawful under the Fourth Amendment. So you're securing the scene so that you can complete the limited investigation. Counsel, this is Judge Coates. You know, I think your bigger problem is the first issue. And at least that's my view at this point. I mean, the theft of the firearms is the basis for reasonable suspicion seems a little bit tough. I mean, it was four days later, and there was an intervening arrest. Would you address that issue? That seems to me more difficult. Yes, Your Honor. I see two different. I think Your Honor has raised two different questions. I'll address them sequentially. So the first question is about the four days. The thing that the thing that we know in this court has repeatedly held is that people who have firearms tend to keep them for a long time, tend not to get rid of them. And so this court has repeatedly upheld much longer delays in between the knowledge that someone is likely to have a going into the months and years, and we have those cases in our counsel. This is Judge Gross. I've got a question that I think kind of follows up on that, and it's a general legal question. But is there is there a limit on how many times someone can be subjected to an investigatory stop based upon the same suspicion of criminal activity? Your Honor, that that question goes exactly to the heart of this issue and into the estoppel nature of the argument that that Mr. Harvey's making in this case, because the premise of your question is that they've stopped him for the same reasonable suspicion. And in fact, the cases that my opposing counsel cited in his brief book, Garcia and Peters, involved a case where the court knew that this stop was for the same reasonable suspicion and that reasonable suspicion had been confirmed or dispelled. OK, so counsel, so that's counsel. That's my follow up question. That is what what additional additional facts are presented here to to go beyond what was already known. Well, there's there's there's I think, Your Honor, I would think about it this way. We have a situation where two where Kyle was announced. So we have the on the fourth. Kyle was alleged to have stolen the firearms on the fifth. He returns to the house and has a physical altercation on the morning of the sixth, something like 1230. And that morning he's called his 911 call for break in and the cops come up and find him like out of breath nearby. And that's when they arrest him for the the the arrest on the sixth. Following that point, and there's nothing in the record to suggest that at the point that they arrest him on the sixth, they did anything with respect to this gun theft question. But following that point, Your Honor, we have this additional set of property driven concerns that come up to the officers. So we know that he returned. The magistrate held that it was an unwelcome return to the to the location where he had previously had a physical altercation where he's alleged to have stolen the firearms. That return is a is a one. I think, Your Honor, I think that contrary to what opposed counsel says, I think there was a trespass there. I think the fact that there was a physical altercation and that he was alleged to have stolen the firearm is enough to say that he was unwelcome to come back. But a trespass is not a felony, is it? No, Your Honor. In fact, you know, doesn't easily at least suggest that that's important. Your Honor, I think I think that the the there's two different pieces to that. I think that the question of whether there's a the infraction or the trespass that is not a felony that is completed can form the basis for a stop. But I will point the court to that. Hughes says there that the Fourth Amendment is shoes bright line rules. And we're not saying that all trespasses, say, can't be the basis for reasonable suspicion. In fact, what it says is if the trespasses involve someone who's armed and dangerous, if it's repeated return to the same location, if there are other property related crimes in the area and all of those things are in the are in Hughes as a possibility where that Terry stop could justify based on that. Those facts, all of those facts are present here. We have someone who's alleged to have stolen firearms. We have somebody who returned unwelcome to the to the location where he'd been. That's what the magistrate judge said. We have someone who created caused another property crime during the arrest on the September 6th. And we have someone who returned a third time and the officer said caused a disturbance. And that's why he wanted to go and stop Kyle on that day. And, of course, they found him nearby right where he was. So I would say, your honor, that's it's while Hughes creates an issue there that I think we fully fleshed out in the briefs. I think that the exception that Hughes suggests could apply. All of those factors are met in this case. And so and so and it was the time it was very time and it was very close time. And I'll say one additional thing. Your honor, the officer testified that he also wanted to stop Kyle to serve him and notice that's a sort of notice. We're not saying that the stop is consensual. I think we can see that in the brief. That's not an argument we have. But you could imagine a situation where that's part of the function of the officer as a part of community caretaking function. That's not a fully developed argument. I offer your honor. But you ask if there's an Your honor, I'll turn to a question that Mr. Moss didn't reach on in his argument, but I think it's important to this case, both attenuation, inevitable discovery, doctrines apply. I think those are here. We have the situation very much like street and like Larry. I know your honor was on that was on that panel also wrote that opinion where the officer approaches someone, learns that that person has a warrant and then would have discovered the firearm. Anyway, all of the things that were present in street and the present in in Lowry are present here. We have the factors of the close in time nature of the allegedly unlawful stop. We're not conceding that, but that allegedly unlawful stop the fact that there's an intervening cause that is the unknown, the warrant that was issued for totally unrelated reasons that the officer learns about during the course of the stop. And the fact that there's just nothing here that suggests flagrant misconduct or a drag net or any of the sort of things that were suggested by street that could be unlawful. And so those are all reasons why the court could could apply here. We know that suppression should be the last resort, not the first remedy. And we know that this here, as as as we discussed in our brief, there's a now there is a factual distinction, right? Because here the officer discovers about learns about the weapon before he learns about the warrant. But I point the court to street for street sites, a case called Sakura and discusses the facts there. And in Sakura there was probable cause to search. But then there was a but then they searched the house anyway before the warrant came through and found the illegal substances. And then later they got the warrant. And what just just as Thomas says in So I think the court should look to those that discussion in street and look and see that it doesn't necessarily matter that there's a temporal difference here, but more that the warrant is an intervening cause. It had nothing to do with this stop. And when the officers discovered that warrant, as we know, that they were going to search incident to arrest, and they would have found the gun at that point. Anyway, I know that the counsel made some waiver type arguments in his reply brief. I just know that the cases he cites all involve appellants, not appellees. This court has longstanding history of cases that say that this court can affirm the district on any basis in a record. We have those cases in our 28 J letter. And also that no matter who, even for the appellant, if he fails to object, mixed questions of fact and law and questions of law are going to get de novo review, even if there's a waiver argument should not be adopted. I know that I'm out of time. If the court has no other questions, we would ask this court to affirm the district court's ruling. Thank you. Mr Moss, a minute and a half for rebuttal. Thank you. Regarding what the government refers to as a stopple argument, I do believe the prior arrest is significant. And despite the government's intention, there's no, it's included in the addendum. There is discussion about the incident at Ravina Road. So when the Prairie View officer is interviewing the Bauer, he talks about the incident. He talks about him staying at Ravina Road. So technically he wasn't arrested for that, but there's certainly reference to him staying there and that incident that's in the addendum. There are three cases that are important. Garcia talks about a second stop violating the fourth exhausted and the eighth circuit, uh, judge chief judge Smith's concurring opinion and Clark points out, you know, the second stop did not violate, did not create a 1983 action because it wasn't clearly established, but it would have violated the fourth amendment. So there's certainly authority for the proposition that you cannot continually and indefinitely continue to arrest someone for the same offense, or even stop them just because that offense remains under investigation. Uh, regarding what the same offense, the arrest here was a different offense, right? Does that matter? Um, I don't believe, uh, I think it's relevant. I think it's relevant, but the key is they did discuss both and that's in the addendum, uh, which was included in my initial brief, um, regarding the unwelcome return on the day of the arrest. This is the supposed trespass. Gebauer, what the complaining witness said that he came and knocked on the front door and then left immediately when requested. That is not a trespass. You can look at the statute, you can look at the law. It doesn't matter what labels please give it, give to it. It has to be supported by facts. So we believe, uh, suppression is warranted in this case. And, uh, Judge Loken, in regard to your question, I think I said, said never at versus Baron. It's actually United States versus Baron. So that case is under, it is on page, uh, V under my table of authorities. Your honor. Um, if, if there are no other, other questions, I don't have anything further. And thank you very much. Well, I'm not seeing it in your table of authorities. Okay. I will. United States versus never at, uh, hyphenate never at Baron is it's a hyphenated last name. The third time you, you restated it. I can find it. Thank you. Okay. Thank you. Your honor. Also case has been thoroughly briefed and argued and we'll take it under advisement.